Filed 3/18/26  P. v. Palacio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C101537 |
| v. | (Super. Ct. No. 96F04508) |
| DOMINIC DAMON PALACIO, | |
| Defendant and Appellant. | |

In April 1997, a jury convicted defendant Dominic Damon Palacio on four counts of lewd and lascivious conduct involving his six-year-old daughter.  In a bifurcated proceeding, the trial court found that defendant had two prior serious felony convictions, two prior strike convictions, and a prior prison term, and it sentenced defendant to 100 years to life in prison, plus 11 years.  This court affirmed the judgment. (*People v. Palacio* (May 25, 1999, C027314) [nonpub. opn.] (*Palacio*).)

In 2023, the Department of Correction and Rehabilitation (CDCR) notified the trial court that it had identified defendant as eligible for resentencing under Penal Code

1

sections 667.5 and 1172.75,[1] pertaining to limits on prior prison term enhancements. In June 2024, the trial court struck the prior prison term enhancement and otherwise reimposed the prior sentence.

Defendant now contends the trial court (1) was required to dismiss the prior strike convictions under section 1385, subdivision (c), (2) should have dismissed the remaining enhancements, and (3) abused its discretion in weighing the pertinent circumstances. Finding no merit in the contentions, we will affirm the judgment.

BACKGROUND

According to this court's previous opinion, defendant's then eight-year-old daughter testified at trial to numerous instances of molestation. Defendant vaginally penetrated her with his penis five or six times and put his penis on her buttocks six or seven times. The daughter saw defendant ejaculate. Defendant told her he would give her whatever she wanted if she did not tell. A friend of the daughter testified that defendant played videos of naked adults for them. Defendant denied molesting the daughter. (*Palacio, supra*, C027314.)

The jury convicted defendant on four counts of lewd and lascivious conduct with a child under the age of 14 (§ 288, subd. (a)). In a bifurcated proceeding, the trial court determined that defendant had two prior serious felony convictions (§ 667, subd. (a)), two prior strike convictions (§§ 667, subd. (b)-(i), 1170.12), and a prior prison term (former § 667.5, subd. (b)). The trial court sentenced defendant to an indeterminate prison term of 100 years to life, plus a determinate term of 11 years. The indeterminate sentence consisted of four consecutive terms of 25 years to life for the lewd and lascivious conduct. The determinate sentence consisted of two five-year terms for the prior serious felony enhancements, plus one year for the prior prison term enhancement.

---

[1] Undesignated statutory references are to the Penal Code.

Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590) amended section 667.5 "by limiting the prior prison term enhancement to only prior terms for sexually violent offenses." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 380.) "In 2021, the Legislature enacted Senate Bill No. 483 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 728, §§ 1, 3)," which implemented a recall and resentencing procedure for individuals serving prison sentences including a prior prison term enhancement. (*People v. Superior Court (Guevara)* (2025) 18 Cal.5th 838, 852.) Based on that procedure, in September 2023, the CDCR notified the trial court that it identified defendant as eligible for resentencing under section 1172.75. The trial court appointed counsel for defendant and the parties submitted briefing.

Defendant asked the trial court to strike the prior prison term enhancement and his prior strike convictions, arguing that his rehabilitative effort, his small number of rules violations while incarcerated, and his age (57 years old at the time of the hearing) indicated a reduced risk to the community. Defendant sought resentencing of 25 years to life in prison. The People countered that the trial court should strike the one-year prior prison term enhancement and otherwise reimpose the previous sentence given the seriousness of defendant's conduct and the lasting impact on the victim. The People also pointed to defendant's rules violations, including an attempted theft of clothes that occurred while the resentencing proceeding was pending. The People argued defendant was a threat to public safety.

At the June 2024 resentencing hearing, the trial court said it was aware of the language in section 1172.75, subdivision (d)(1) and (d)(2), that defendant was entitled to a full resentencing hearing, and that he could argue for the application of ameliorative changes in the law that would reduce his sentence. The trial court said it was also aware of, and considered, its discretion in the matter, both sua sponte and as requested by defendant. It said that having carefully considered the record, it would strike the now-

3

invalid one-year prior prison term enhancement and otherwise decline to further reduce defendant's sentence.

The trial court began by explaining its reasons for declining to dismiss the prior strike convictions:

"[T]he [c]ourt has considered the [c]onstitutional rights of the [defendant], including due process, equal protection, and the right to be free from cruel and unusual punishment, and the interests of society as represented by the People, including the Victim's Bill of Rights in California's [C]onstitution.  Further, the [c]ourt has considered and weighed various individualized factors relative to [defendant], the circumstances of the current offenses, the nature of the prior strike convictions, and [defendant's] other criminal history.

"The [c]ourt is mindful of its duty to consider all relevant factors and look at the totality of the circumstances.  For example, it would not be proper for the [c]ourt to focus solely on a single factor to the exclusion of others.  [¶]  As for the current case, [d]efendant was 29 to 30 years old when he repeatedly committed lewd acts upon his daughter, including acts of vaginal sex and attempted anal sex over a period of time when she was six years old.  [Defendant] was not youthful at the time in the eyes of the law, nor was he a stranger to the criminal justice system.  His four felony convictions in the current case followed six other adult convictions, three of which were felonies, and two of those were strikes for which he was still on parole when he committed the crimes against his daughter.  The current case brought the total number of strike convictions to six.

"As for his prior cases, his criminal convictions as an adult started in 1985 at roughly age 19 with misdemeanor vehicle tampering followed the next year with misdemeanor petty theft, then four years later with a felony vehicle theft, then the same year with a misdemeanor for filing a false police report.  Then the next year, in 1991 at 25 years old, he was convicted of his first strike for armed robbery and a second strike

4

for attempted robbery, each of which occurred at different Del Taco restaurants on different days after midnight and involved victims, the use of a shotgun, and a teenage boy accompanying him.  Each of them also occurred while [defendant] was on felony probation for the prior vehicle theft.  Each of them resulted in a prison sentence, and he was on parole for each of them while perpetrating offenses in 1997 against his daughter.

"Not lost on the [c]ourt is that all of [defendant's] prior convictions were in the 1980s and [1990s], making them all more than 30 years old now.  The remoteness of his prior convictions is an important factor, but it becomes less so when viewed in the context of his subsequent criminality and periods of imprisonment.

"It is worth noting that before the current case all of his prior felony convictions as an adult occurred between 1985 and 1991 when he was 19 to 25 years old.  Indeed, with the exception of the current case, it appears the entirety of his adult record occurred in a six-year span when [defendant] was still a young man.  The [c]ourt has thought long and hard about this fact.  The [c]ourt has also considered the fact that [defendant] was in prison from 1991 until his release on parole in 1995.  And he's been in prison in the current case since 1997, so that's for the last 27-plus years.

"As for his current circumstances, [defendant] is now 58 years old.  While in prison, he's accomplished various academic achievements including three associate degrees.  He's held jobs, including as a teacher's aide, literacy tutor, clerk, clothing worker, meat processor, porter, and others.  He's additionally availed himself of programming or self-help, including a victim awareness offender program.  He's also managed to largely stay out of trouble in prison, in that he's had just a handful of rule violations over the years, his last one was about eight months ago, and it was a serious rule violation resulting in discipline for trying to steal new clothes while working in the prison laundry or clothing room.

"On the one hand, overall, his prison conduct record indicates [an ability] to follow rules within the confines of a restricted, controlled environment.  On the other

hand, his recent violation, even though it did not involve any violence and was not exactly the crime of the century, is significant and concerning, because it indicates, like the offenses in the current case and like those comprising the prior strike convictions, that he's unwilling to control his impulses or desires when he's got access or opportunity to do otherwise and/or when he's in a trusted or superior position.

"Having weighed and considered all factors, the [c]ourt on balance declines to strike either of the two prior strikes in this case. Doing so would immediately eliminate [defendant's] indeterminate sentence and drastically shorten his period of imprisonment, thereby frustrating, not furthering the interests of justice because it would minimize the serious risk he poses to society and endanger the public. Likewise, treating [defendant] as though he does not have any prior strikes or even treating him as though he only has one prior strike, for purposes of sentencing or resentencing in this case, is not presently in the interest of justice because he is not presently someone who falls outside the spirit of the [three strikes] law. Nor does the [c]ourt find that reimposing the same indeterminate sentence would be overly severe when given the facts of the current case and his significant prior history or that it would presently cause him unreasonable or disproportionate detriment.

"Overall, apart from the passage of time and [defendant's] age today not a great deal has changed since the original sentence was imposed. At least not to the extent where continued imprisonment is no longer in the furtherance of justice. [¶] Accordingly, for all of the reasons stated, the [c]ourt declines to strike [d]efendant's prior strikes. As an aside, the [c]ourt notes that the [three strikes law] is an alternative sentencing scheme, not an enhancement, and thus, [Senate Bill No. 81] and the resulting amendments to [section 1385, subdivision (c)] do not mandatorily apply to strike convictions because [section 1385, subdivision (c)] pertains to enhancements and prior strikes are not enhancements."

6

The trial court next explained its reasons for declining to dismiss the two five-year prior serious felony conviction enhancements imposed under section 667, subdivision (a). It said it considered the same factors and the totality of the circumstances it had already described, and it adopted and incorporated that same balancing and reasoning in declining to dismiss the prior serious felony conviction enhancements. The trial court added that despite having been incarcerated and on probation and parole, defendant had not changed his ways. The trial court found that the additional punishment under the Habitual Offender Law was appropriate in this case, and it would not be in the interest of justice to dismiss either of the five-year enhancements.

In addition, the trial court explained that it had also considered Senate Bill No. 81 and the language of section 1385 enumerating nine mitigating circumstances relative to dismissing enhancements. The trial court said it considered that the convictions giving rise to the enhancements were the same as the prior strike convictions, they were six years old when defendant was originally sentenced, they were roughly 33 years old at the time of the resentencing hearing, and there is more than one enhancement in the case, and the defense claimed that defendant had been abused physically and sexually as a child. The trial court stated: "Regardless, the [c]ourt finds that dismissing either one of the five-year enhancements would endanger public safety as that term is defined in [section] 1385. Dismissing one enhancement would cut in half [defendant's] determinate term. Dismissing both of them would eliminate it altogether. Under either scenario, the resulting shorter sentence would endanger public safety." The trial court said defendant had repeatedly demonstrated his propensity to pose a serious danger to the community.

The trial court explained that on balance, the passage of time thus far, defendant's current age, his academic achievements, and his rehabilitative efforts, even when combined, did not outweigh the likelihood that his release would result in physical injury or serious danger to others.

7

The trial court said it had further considered sua sponte the notion that the five-year consecutive terms would not be served until after the indeterminate terms, and in turn, the notion that it may only be after a finding of parole suitability by the Board of Parole Hearings and only once he would otherwise be released from his indeterminate terms that the determinate sentence would start; and under those circumstances, the Board of Parole Hearings would have already determined that defendant no longer presented an unreasonable risk of danger to the public. But the trial court stated that even under such a scenario, and even if defendant's total indeterminate sentence was so long, and thus his determinate term so far away, that it arguably could not be said today that dismissing the enhancements would endanger public safety, the trial court would still decline to dismiss either of the enhancements. The trial court concluded that even in the absence of a likelihood of resulting physical injury or serious danger to others, after affording great weight to the mitigating factors and applying the mandated presumption in favor of dismissal under section 1385, subdivision (c)(2), the presumption was rebutted and outweighed.

The trial court said it had considered the factors in rule 4.401 et. seq. of the California Rules of Court, including the general sentencing objectives in rule 4.410, such as protecting society, punishing crime, encouraging a law-abiding life, deterring future offenses, preventing new crimes, and promoting sentence uniformity. The trial court explained that when the 30-year-old defendant engaged in sexual acts with his six-year-old daughter, "he was already a two-time striker and a violent recidivist, having previously used a shotgun . . . to try to rob two different Del Taco restaurants for which he went to prison and was still on parole. The trial court said that "[u]nder the totality of circumstances, the [c]ourt does not find that the great weight afforded to and the presumption regarding the mitigating factors results in dismissing either of the enhancements at this time, even when combined with any positive efforts he's made since then and who he might be or want to be today. [¶] In other words, the fact that the five-

8

year priors would be used in this case under both the [three strikes law] and the habitual offender law, combined with the fact that this case involves two separate five-year enhancements, combined with the fact that 58-year-old [defendant] has pursued his education and availed himself of some rehabilitative opportunities in prison during the last 27 or so years are rebutted and outweighed and overcome by the nature, circumstances, and impacts of his criminal conduct and history."

The trial court resentenced defendant to an aggregate prison term of 100 years to life plus 10 years.

DISCUSSION

Defendant contends the trial court (1) was required to dismiss the prior strike convictions under section 1385, subdivision (c), (2) should have dismissed the remaining enhancements, and (3) abused its discretion in weighing the pertinent circumstances.

Defendant begins by arguing that the trial court should have treated the prior strikes as enhancements under section 1385, subdivision (c). He acknowledges that in *People v. Burke* (2023) 89 Cal.App.5th 237, 244, this court determined that section 1385, subdivision (c) does not apply to the three strikes law and instead only applies to "enhancements" as that term is commonly understood. Nevertheless, defendant disagrees with this court's conclusion, urging us to reconsider *Burke*. We decline to do so, as the conclusion that section 1385, subdivision (c) does not apply to prior strike convictions is well established. (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 9, review denied (Feb. 11, 2025, S288676).) "[C]ourts have uniformly rejected the contention that the mitigating factors identified in subdivision (c) of section 1385 apply to a request to dismiss a prior strike because the [three strikes law] is an alternative sentencing scheme, not an 'enhancement.' " (*People v. Grandberry* (2026) 118 Cal.App.5th 14, 19.)

Defendant next complains that the trial court erred in finding that dismissal of the enhancements would endanger public safety, in failing to dismiss all but one

enhancement, and in erroneously weighing "the pertinent circumstances and failing to dismiss any enhancements under section 1385, subdivision (c)."

Section 1385, subdivision (c) provides in pertinent part: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

We review a trial court's sentencing decisions for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) Use of an incorrect legal standard demonstrates an abuse of discretion. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

Defendant argues the trial court's determination that dismissing either of the prior serious felony enhancements would endanger public safety was problematic given defendant's aggregate 100-year-to-life indeterminate term. (See, e.g., *Gonzalez, supra*, 103 Cal.App.5th at pp. 228-231 [in considering whether a dismissal of an enhancement would endanger public safety the court must consider how dismissal of that enhancement would impact the possible release date, including the possible role of the Board of Parole Hearings].) However, defendant has not established prejudice, given that the trial court

10

also ruled that "even in the absence of a likelihood of resulting physical injury or serious danger to others, after affording great weight to the mitigating factors and applying the mandated presumption in favor of dismissal under [section 1385, subdivision (c)(2)], the presumption is rebutted and outweighed in this case at this time."  Defendant argues this further ruling was an abuse of discretion and violated due process because the trial court's determination did not comply with the California Supreme Court's decision in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*).  Although the trial court's decision predated *Walker,* we do not agree that it requires reversal.

In *Walker*, the California Supreme Court granted review to decide whether the amendment to section 1385, subdivision (c), which requires a trial court to afford "great weight" to enumerated mitigating circumstances, created a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety.  (*Walker, supra*, 16 Cal.5th at p. 1031.)  The Supreme Court held it did not, explaining:  "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement.  But ultimately, the court must determine whether dismissal is in the furtherance of justice.  This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in the furtherance of justice.' "  (*Id*. at p. 1036; see *id.* at pp. 1129, 1032-1033.)

Here, the trial court considered the totality of the circumstances, including but not limited to defendant's constitutional rights, the interests of society, and factors related to defendant, such as the circumstances of the current offenses and defendant's prior criminal history.  The trial court noted defendant's sexual abuse of his six-year-old daughter when he was 29 to 30 years old and on parole for having committed robbery

and attempted robbery, which he perpetrated with a teenager in tow and while on probation for vehicle theft. While defendant, who was age 58 at the time of the resentencing hearing, had participated in prison employment, obtained educational degrees, and largely stayed out of trouble while incarcerated, he also committed a serious rules violation during the pendency of the resentencing proceeding.

Moreover, the trial court considered that the enhancements were based on the same convictions as the prior strikes, the convictions were six years old when originally imposed, but 33 years old at resentencing, and there was more than one enhancement in the case. It also noted that defendant claimed he had been sexually and physically abused as a child. The trial court afforded great weight to those circumstances, but nevertheless found under the totality of the circumstances that the interests of justice would not be furthered by dismissing either of the prior serious felony enhancements. It concluded the mitigating circumstances and defendant's rehabilitative efforts were "outweighed and overcome by the nature, circumstances, and impacts of his criminal conduct and history." Substantial, credible evidence in the record supports the trial court's determination. (*Walker, supra*, 16 Cal.5th at p. 1036.)

Defendant argues that in the absence of a negative "public safety determination," this court must dismiss at least one of defendant's enhancements pursuant to section 1385, subdivision (c)(2)(B). But the argument is contrary to *Walker*, which held that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to enumerated mitigating circumstances when they are present." (*Walker, supra*, 16 Cal.5th at p. 1029.)

The trial court's analysis was consistent with the guidance of *Walker, supra*, 16 Cal.5th at page 1036, and defendant has not otherwise demonstrated prejudicial error or abuse of discretion requiring reversal.

12

## DISPOSITION

The judgment is affirmed.

                                  /S/
                             MAURO, J.

We concur:

/S/
HULL, Acting P. J.

/S/
MESIWALA, J.